IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WAYNE REDDICK,

    Plaintiff,

v.                                               CIVIL ACTION NO.: CV608-006

CO. II JOSEPH HUTCHESON,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Baldwin State Prison in Hardwick, Georgia, filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement at Georgia State Prison ("GSP") in Reidsville, Georgia. Defendant Joseph Hutcheson ("Defendant") filed a Motion for Summary Judgment.[1] Plaintiff filed a Response.[2] For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges that he is limited to a wheelchair and had a doctor's appointment on the morning of August 10, 2007. Plaintiff also alleges that Defendant Hutcheson acted deliberately indifferent to his serious medical needs by refusing to retrieve his

---

[1] Defendant previously filed a Motion to Dismiss. The Court's disposition of that Motion resulted in Plaintiff's deliberate indifference claim being Plaintiff's only remaining claim. (Doc. Nos. 83, 89).

[2] Plaintiff did not file a "true" Response to Defendant's Motion, but, rather, a Motion that Defendant's Motion for Summary Judgment be denied. (Doc. No. 135). The undersigned will use this pleading, as well as others, to craft together Plaintiff's response—a task made more difficult in light of Plaintiff's attempts to add additional claims.

wheelchair and escort him to his scheduled doctor's appointment. (Doc. No. 1, p. 3). Plaintiff contends that his Eighth Amendment rights were violated by Defendant's actions. (Id.).

Defendant asserts that Plaintiff fails to state a claim for relief. Defendant also asserts that he is entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v.

2

Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

Defendant asserts that Plaintiff suffered from seizures and hypertension and was assigned to the Chronic Care Clinic ("the Clinic") for periodic evaluations because of these conditions. Defendant contends that Plaintiff went to the Clinic on August 3, 2007, for a routine follow-up on his lab work. Defendant also contends that Plaintiff was alert, had no apparent signs of distress, and was advised that his lab results were not ready for review. Defendant also contends that Plaintiff had another appointment scheduled for August 10, 2007, but Plaintiff did not return to the Clinic on that date. Defendant states that Plaintiff's only visit to the medical unit from August 3 until November 1, 2007, was on October 26, 2007, after a use-of-force incident. Defendant alleges that Plaintiff's contention that he had an unattended, serious medical need on August 10, 2007, is not supported by his medical records. Defendant also alleges that, even assuming Plaintiff had a serious medical need on the date in question, he was unaware of that need. Defendant avers that his job duties included escorting inmates to the hospital floor, but he did not work in the medical division and was not responsible for or privy to Plaintiff's medical problems. In addition, Defendant asserts that Plaintiff did

AO 72A
(Rev. 8/82)

not follow prison rules or "prepare his cell for safe transport" when he failed to remove paper from his cell window per Defendant's request. (Doc. No. 125-1, p. 9). Defendant also asserts that Plaintiff made no sick call requests in the days immediately following August 10, 2007.

Plaintiff states that Defendant intentionally denied him access to medical care and intentionally interfered with prescribed treatment. Plaintiff contends that Defendant's actions constitute deliberate indifference to serious medical needs and the unnecessary and wanton infliction of pain. (Doc. No. 135, p. 1). As a result of Defendant's failure to escort Plaintiff on one (1) occasion[3], Plaintiff alleges that: he lost one-third (1/3) of his right lung; his cancer spread throughout his body; and he suffered an uncontrollable seizure; head injuries; loss of hearing and blood; a back injury; weight loss; the loss of food, drink, and sleep; mental and emotional suffering; stress, depression; and "other adverse effects." (Doc. No. 149, p. 3). Plaintiff asserts that Defendant knew of his serious medical needs because he heard the doctors say what might happen if Plaintiff missed treatment.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of

---

[3] Plaintiff states he learned in November 2009 that Defendant refused to get Plaintiff medical treatment on June 1, 2007. (Doc. No. 146, p. 1; Doc. No. 149, p. 4). However, the Court did not sanction this claim and will not allow Plaintiff to proceed with this claim at this time.

4

the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

According to Defendant's Affidavit, he arrived at Plaintiff's cell door to escort Plaintiff, but Plaintiff's window was covered with paper and he refused to remove it. Defendant states that he could not see into Plaintiff's cell through the window due to the obstruction, and did not open Plaintiff's cell "based on the heightened risk of injury[ ]" and violation of prison policy. (Doc. No. 125-2, p. 4). Defendant also states that he was

5

unaware of any of Plaintiff's "ailments or prescribed medications, as the medical staff provides treatment." (Id.). Defendant further states that, as a correctional officer, one of his duties is "to escort inmates to and from the hospital floor and to take every precaution to protect the inmates and reduce any threat to their personal safety." (Id.).

Dr. Tommy Jones ("Dr. Jones"), the Medical Director at GSP, submitted an Affidavit and noted that his Affidavit is "based on [his] personal knowledge . . ., numerous medical examinations . . ., and review of [Plaintiff's] medical records from January through November 1, 2007, when he was transferred to Hays State Prison ('Hays')." (Doc. No. 125-4, p. 3). Dr. Jones states that medical staff at GSP treated Plaintiff for hypertension, seizure disorder, and emphysema, as well as a mental health disorder. Dr. Jones also states that, because of Plaintiff's conditions, he was assigned to the Clinic "for periodic evaluations" and to ensure that he was in compliance with his treatment and prescribed medications. (Id. at p. 5). Dr. Jones declares that Plaintiff refused treatment on three (3) occasions—January 31, June 1, and June 28, 2007—, and that he "refused to report to" the Clinic on August 10, 2007, "for a follow up appointment regarding his lab work[,] he refused to sign the treatment form[, and h]e was informed that by refusing treatment he could suffer seizures and or liver damage." (Id.). Dr. Jones also declares that Plaintiff went to the medical unit on August 3, 2007, for a "routine follow up appointment" "regarding his lab work." (Id. at p. 7). According to Dr. Jones, Plaintiff was told on that date that his lab results were not available at that time, and another appointment was scheduled for August 10, 2007, for Plaintiff to get his lab results, as no other appointment was scheduled for any required treatment and care. Dr. Jones states that Plaintiff's medical records do not reveal any sick call

6

requests for treatment (emergency or otherwise) for a seizure or related side effects, a head injury, knocked out teeth, bitten tongue, loss of vision, or chest pains for the days after August 10, 2007. Rather, Dr. Jones avers, Plaintiff's next visit to the medical unit was on October 26, 2007, after a use-of-force incident.

Defendant also submitted a copy of Plaintiff's medical records, which reveal that Plaintiff was seen in the medical unit on August 3, 2007, and Plaintiff was informed that his lab results were not available at that time. (Id. at p. 32). Plaintiff was to see medical on August 10, 2007, for "PA Day/CIC" and that Nurse Lanier told Plaintiff that he could have seizures and/or liver damage if he refused treatment. (Id. at p. 21). Plaintiff refused to sign the Refusal of Treatment Against Medical Advice form, which was signed by two (2) witnesses.[4] (Id.). Plaintiff was scheduled to go to medical on September 20, 2007, to review his lab work results, but Plaintiff refused treatment and refused to sign the Refusal form. (Id. at 23). Plaintiff was seen in medical on October 26, 2007, at which time he complained of back pain and was given pain medication. (Id. at 34).

Plaintiff filed a grievance regarding his contention that Defendant did not escort him to the medical unit on August 10, 2007. The Warden informed Plaintiff that his investigation revealed that he "had paper covering the window in [his] cell. Officers will not open cells with windows covered for security reasons." (Doc. No. 125-2, p. 11).

While Plaintiff submitted some documentation, these documents do not establish the existence of a genuine issue of material fact regarding his deliberate indifference

---

[4] See Document Number 125-4, pages 10 through 15, which is Standard Operating Procedure VH82-0002. This Procedure outlines the steps prison officials are to take if an inmate exercises his right to refuse medical treatment. Plaintiff does not allege that this Procedure was not enforced, and the undersigned need not discuss it further.

7

claim against Defendant. Plaintiff submitted a "Segregation/Isolation Observation Record" from August 9 through August 15, 2007, and a Checklist for those same dates. (Doc. No. 146, pp. 8-9). Plaintiff also submitted a document which appears to be handwritten notes by GSP staff dated August 10, 2007. (Id. at pp. 10-14). However, these documents reveal *nothing* about the contentions Plaintiff makes in this cause of action. Plaintiff has failed to present evidence which suggests that Defendant knew he suffered from serious medical needs and that Defendant disregarded those needs.[5] Even if Defendant did not take Plaintiff to medical on August 10, 2007, there is no evidence whatsoever that Plaintiff suffered from any injury caused by Defendant's conduct. Goebert, 510 F.3d at 1306. In short, Plaintiff has not overcome his burden to successfully oppose Defendant's Motion.

It is unnecessary to address Defendant's qualified immunity defense.

---

[5] The undersigned notes Plaintiff's requests to have additional time to gather evidence to present to the Court. (Doc. No. 146, p. 2; Doc. No. 148, p. 2). However, Plaintiff has been afforded ample time to gather whatever evidence he contends supports his opposition to Defendant's Motion. Defendant filed his Motion on November 16, 2009, and Plaintiff requested an extension of time to file a Response. The undersigned granted Plaintiff's motion and allowed him until December 31, 2009, to file any desired response to Defendant's Motion. (Doc. No. 134). Since Defendant's filing of his Motion, Plaintiff has filed no less than 17 pleadings with the Court. Should Plaintiff desire additional time to gather evidence, he may do so by filing a motion for extension of time to file objections to this Report.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 25th day of March, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)